**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **LEONARD BAUGH,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:16-cv-02628** |
| | ) | **Judge Aleta A. Trauger** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM

Before the court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct

Sentence by a Person in Federal Custody (Doc. No. 1) filed by movant Leonard Baugh, through

counsel, seeking to vacate and reduce the sentence entered upon Baugh's 2013 criminal conviction

following a jury trial in *United States v. Baugh.*, No. 3:09-cr-00240 (M.D. Tenn. Feb. 15, 2013)

(Judgment, Doc. No. 2331).[1] For the reasons set forth herein, The motion to vacate will be granted

in part, in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019).

## I.      PROCEDURAL BACKGROUND

Leonard Baugh was first identified as a defendant in the underlying criminal case in a Fifth

Superseding Indictment filed in May 2010. (Crim. Doc. No. 130.) The Ninth (and final)

Superseding Indictment, encompassing forty-three criminal counts against twenty defendants

including Baugh (eight others having previously pleaded guilty), was issued in October 2012.

(Crim. Doc. No. 1408.) Only fourteen of the counts were against Baugh.

Baugh and co-defendant Omega Harris were tried by jury before then-Senior Judge John

---

[1] References to the criminal docket will hereafter be designated as "Crim. Doc. No. __."

T. Nixon from January 29 through April 2, 2013. Baugh was found guilty on two counts of conspiracy to commit Hobbs Act extortion and robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Counts 13 and 16); one count of possession of a firearm in furtherance of a crime of violence, specifically, conspiracy to commit a Hobbs Act extortion and robbery, in violation of 18 U.S.C. §§ 924(c) and 2 (Count 14); two counts of conspiracy to possess with intent to distribute controlled substances, including cocaine and crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2 (Counts 15 and 23); and one count of possession of a firearm in furtherance of a drug-trafficking crime and a crime of violence, specifically conspiracy to possess a controlled substance and conspiracy to commit Hobbs Act robbery and extortion, in violation of 18 U.S.C. §§ 924(c) and 2 (Count 17). (Verdict Form, Crim. Doc. No. 2135.)[2]

The trial court denied Baugh's Motion for Judgment of Acquittal Notwithstanding the Verdict, *see United States v. Baugh*, No. 3:09-cr-00240-17, 2013 WL 12312850 (M.D. Tenn. June 4, 2013) (Nixon, S.J.), and Baugh was sentenced on June 20, 2013 to a total of 570 months of imprisonment (47.5 years): 210 months on Counts 13, 15, 16, and 23, to run concurrently with each other but consecutively to a state sentence he was already serving; five years (60 months) on Count 14, to run consecutively to the sentences imposed on Counts 13, 15, 16, and 23; and twenty-five years (300 months) on Count 17, to run consecutively to all other sentences. (Crim. Doc. No. 2331.) Judgment was entered on July 3, 2013. (Crim. Doc. No. 2331.)

Baugh appealed on the grounds that (1) the evidence was insufficient to support one of the convictions for Hobbs Act conspiracy; (2) the delay between indictment and trial violated his right

---

[2] Baugh was acquitted on Counts 37, 38, 41, and 42. The jury was unable to reach a verdict and the court declared a mistrial as to Counts 33, 34, 35, and 36. (Crim. Doc. Nos. 2135, 2152.) Upon the government's motion, those counts were later dismissed without prejudice. (Crim. Doc. No. 2204.)

to a speedy trial; and (3) his sentence was procedurally and substantively unreasonable. The Sixth Circuit affirmed the conviction. *United States v. Baugh*, 605 F. App'x 488 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 133 (Oct. 5, 2015).

Baugh, through counsel, filed the present § 2255 motion on October 3, 2016, asserting that he is entitled to relief under *United States v. Johnson*, 135 S. Ct. 2551 (2015). Specifically, he argues that conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence for purposes of 18 U.S.C. § 924(c)(3) and that he no longer qualifies as a career offender under the United States Sentencing Guidelines ("USSG") § 4B1.1. He also raises claims of ineffective assistance of trial and appellate counsel. (Doc. Nos. 1, 2.) The government has filed a Response (Doc. No. 12); Baugh filed a Reply (Doc. No. 13); and the government filed a Surreply (Doc. No. 14) to address a new argument raised in Baugh's Reply.

## II.    STANDARD OF REVIEW

The movant brings this action under 28 U.S.C. § 2255. Section 2255 provides that a prisoner serving a sentence for violation of a federal criminal law who claims that his sentence was imposed in violation of the Constitution "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). In order to obtain relief under § 2255, a petitioner "'must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

A motion under § 2255 is subject to a one-year statute of limitations, running from the latest of four possible triggering events, including "the date on which the judgment of conviction becomes final" and "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively

applicable to cases on collateral review." 28 U.S.C. § 2255(f)(1) & (3).

## III.    ANALYSIS

### A.    Count 14, *Johnson*, and *Davis*

Count 13 of the Ninth Superseding Indictment charged Baugh and others with conspiring to commit Hobbs Act robbery and extortion on or about September 5, 2009, in violation of 18 U.S.C. §§ 1951 and 2. Count 14 charged the possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c). The "crime of violence" that was the predicate for this charge is identified in the Indictment as the conspiracy to commit Hobbs Act robbery and extortion charged in Count 13. (Crim. Doc. No. 1408, at 9, 10.) Baugh argues, based on *Johnson*, that Hobbs Act conspiracy no longer qualifies as a crime of violence, as that term is defined in § 924(c). [3]

In *Johnson v. United States*, the Supreme Court invalidated the so-called residual clause of the definition of "violent felony" contained in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), as unconstitutionally vague under the Due Process Clause of the Fifth Amendment. *Johnson*, 135 S. Ct. 2551, 2563 (2015). The Court later held that *Johnson* was a substantive decision that applied retroactively on collateral review. *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). Baugh's claim under *Johnson* is, therefore, appropriately raised in this § 2255 motion.

Section 924(c)(3) defines the term "crime of violence" similarly to the definition of

---

[3] Baugh was not actually charged with Hobbs Act robbery itself. Nonetheless, he repeatedly, throughout his motion, conflates Hobbs Act robbery and Hobbs Act conspiracy, and he repeatedly avers that Hobbs Act *robbery* is not categorically a crime of violence under *Johnson*. Actually, it is. *United States v. Gooch*, 850 F.3d 285, 292 (6th Cir. 2017), *cert. denied*, 137 S. Ct. 2230 (2017). The court nonetheless construes Baugh's motion as arguing that Hobbs Act *conspiracy* is not a crime of violence.

"violent felony" in § 924(e)(2)(B). For purposes of § 924(c), a crime of violence is a felony that

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Courts commonly refer to § 924(c)(3)(A) as the "force clause" or "elements clause" and to § 924(c)(3)(B) as the "residual clause."

The similarities between the residual clauses in § 924(c)(3)(B) and § 924(e)(2)(B)(ii) gave rise to the question of whether *Johnson* had the effect of invalidating the former as well as the latter. While other courts disagreed, the Sixth Circuit initially held that the "residual clause" in 18 U.S.C. § 924(c)(3)(B) was not affected by *Johnson*. *United States v. Taylor*, 814 F.3d 340, 375–76 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 1975 (May 14, 2018), *rehr'g denied*, 138 S. Ct. 2646 (June 11, 2018). However, in 2019, well after the briefing on Baugh's present motion had concluded, the Supreme Court resolved the circuit split on the issue, holding that § 924(c)(3)(B), like the ACCA's residual clause, is unconstitutionally vague, thus abrogating *Taylor*. *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019).[4]

As a result, it is now clear that a conviction for conspiracy to commit Hobbs Act robbery cannot be sustained as a predicate crime of violence under the residual clause of § 924(c)(3)(B). *See United States v. Ledbetter*, 929 F.3d 338, 361 (6th Cir. 2019) (invalidating convictions under § 924(c) where the underlying crime of conviction was conspiracy to commit Hobbs Act robbery,

---

[4] Those courts that have considered the matter have concluded that *Davis* is also retroactively applicable to cases on collateral review. *See, e.g.*, *In re Mullins*, 942 F.3d 975, 979 (10th Cir. 2019) ("*Welch* dictates that *Davis*—like *Johnson*—'announced a substantive rule that has retroactive effect in cases on collateral review.'" (quoting *Welch*, 136 S. Ct. at 1268)); *In re Hammoud*, 931 F.3d 1032, 1039 (11th Cir. 2019) ("*Davis* announced a new substantive rule, and *Welch* tells us that a new rule such as the one announced in *Davis* applies retroactively to criminal cases that became final before the new substantive rule as announced.").

which the parties agreed qualified as a crime of violence only under § 924(c)(3)(B)).

The government does not argue in this case that Hobbs Act conspiracy qualifies as a crime of violence under the elements clause, § 924(c)(3)(A), and instead insists only that the movant's claim is foreclosed by the Sixth Circuit's (now invalidated) opinion in *Taylor*. Even if the government had argued otherwise, the court finds it clear that conspiracy to commit Hobbs Act robbery also cannot qualify as a crime of violence under § 924(c)(3)(A), because it does not require proof of any element directly implicating the use of force. *Accord Brown v. United State*s, 942 F.3d 1069 (11th Cir. 2019); *United States v. Barrett*, 937 F.3d 126, 130 (2d Cir. 2019); *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019); *Winston v. United States*, No. 16-00865, 2019 WL 4753803, at *3 (M.D. Tenn. Sept. 30, 2019) (Lawson, J.).

Thus, Baugh's conviction for conspiracy to commit Hobbs Act robbery does not qualify as a crime of violence under the elements clause of section 924(c)(3)(A), and it cannot qualify under the now invalidated residual clause of section 924(c)(3)(B). There is no other qualifying predicate offense to support the conviction under section 924(c) set forth in Count 14 of the Ninth Superseding Indictment. Baugh therefore has established that he is in custody on Count 14 in violation of the federal Constitution, and his motion to vacate will be granted insofar as it relates to this conviction and the 60-month sentence associated with it.

### B.    Count 17 and § 924(c)(1)(C)(i)

Count 17 of the Ninth Superseding Indictment charged that Baugh and others, on or about September 10, 2009, knowingly possessed firearms in furtherance of a drug trafficking crime and a crime of violence in violation of 18 U.S.C. § 924(c). The indictment identified the underlying crimes as a conspiracy to possess a controlled substance and a conspiracy to commit Hobbs Act robbery and extortion, as charged in Counts 15 and 16, respectively. (Crim. Doc. No. 1408, at 12.) Baugh argues that his conviction under this count, too, must be vacated under *Johnson*, because

the residual clause of § 924(c)(3) is unconstitutionally vague. While this argument is unavailing, Baugh is nonetheless entitled to resentencing on Count 17 in light of the required vacatur of the conviction on Count 14.

    *1.*  *The Conviction on Count 17 Is Not Affected by* Johnson *or* Davis

  The part of § 924(c) under which Baugh was convicted (on both Counts 14 and 17) states:

> Except to the extent that *a greater minimum sentence is otherwise provided by this subsection* or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such *crime of violence or drug trafficking crime*–
>
> (i) be sentenced to a term of imprisonment of not less than 5 years . . . .

18 U.S.C. § 924(c)(1)(A)(i) (emphasis added).

  The term "crime of violence" is defined, for purposes of § 924(c)(1), by § 924(c)(3), set forth above. And, as discussed above, a Hobbs Act conspiracy no longer qualifies as a crime of violence under § 924(c)(3). Nonetheless, a conspiracy to possess cocaine with intent to distribute still qualifies as a drug-trafficking crime, which is defined by the statute to include "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 *et seq.*)." 21 U.S.C. § 924(c)(2). The movant does not contend that § 924(c)(2) is void for vagueness. Count 15 of the Indictment charged conspiracy to possess with intent to distribute cocaine, a Schedule II controlled substance, a violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. Section 846 expressly criminalizes attempts and conspiracies to possess controlled substances. *See* 21 U.S.C. § 846. ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.").

  Section 846 is clearly a felony punishable under the Controlled Substances Act, 21 U.S.C.

§ 801 *et seq.*, and Baugh was convicted on Count 15. Consequently, Baugh's conviction on Count 17 is not subject to vacatur under *Johnson*, because it was also premised upon his participation in a drug-trafficking crime as defined by § 924(c)(2).

### 2. Resentencing on Count 17 Is Required

The PSR found, and the defendant conceded at sentencing, that the mandatory minimum sentence for Baugh's conviction on Count 17, under the circumstances presented there, was 25 years (300 months):

> The guideline for a violation of 18 U.S.C. § 924(c) is U.S.S.G § 2K2.4. Pursuant to U.S.S.G. § 2K2.4(b), the guideline is the minimum term of imprisonment required by statute. According to 18 U.S.C. § 924(c)(1)(C)(i), *in the case of a second or subsequent conviction for a violation of 18 U.S.C. § 924(c)*, the person shall be sentenced to a term of imprisonment of not less than 25 years. Also, the sentence shall not be imposed concurrently to any other term of imprisonment. 18 U.S.C. § 924(c)(1)(D)(ii). Therefore, the guideline sentence for Count Seventeen is 300 months, to be served consecutively with any other term of imprisonment imposed. U.S.S.G. § 5G1.2(a).

(Crim. Doc. No. 2360 ¶ 86 (emphasis added); *see also* Crim. Doc. No. 2301, at 5.) The court therefore imposed a 300-month consecutive sentence on Count 17.

This was because, when Baugh was sentenced in 2013, 18 U.S.C. § 924(c)(1)(C)(i) read as follows: "In the case of a second or subsequent conviction under this subsection, the person shall . . . be sentenced to a term of imprisonment of not less than 25 years." 18 U.S.C. § 924(c)(1)(C)(i) (effective Oct. 6, 2008 to Dec. 20, 2018). Under that version of the statute, a defendant convicted of multiple § 924(c) charges at the same time—a process often referred to as "stacking"—was subject to higher mandatory minimum penalties for each subsequent count, even if he had no prior § 924(c) convictions.[5]

---

[5] In December 2018, Congress passed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, limiting the application of § 924(c)(1)(C). Instead of automatically triggering a 25-year sentence for a second or subsequent § 924(c) conviction, even one handed down concurrently, Section 403(a) of the First Step Act requires the existence of "a prior [§ 924(c)] conviction . . .

In other words, when Baugh was convicted, his conviction on Count 14 under § 924(c) resulted in a mandatory minimum five-year consecutive sentence. 18 U.S.C. § 924(c)(1)(A)(i). In light of that § 924(c) conviction, his second § 924(c) conviction on Count 17 triggered the application of § 924(c)(1)(C)(i), requiring a mandatory minimum consecutive sentence on the latter count of 25 years. Now, because his first § 924(c) conviction must be vacated, as set forth above, his conviction on Count 17 will no longer qualify as a "second or subsequent conviction under [§ 924(c)]." 18 U.S.C. § 924(c)(1)(C)(i). Instead, it triggers the five-year mandatory minimum, consecutive sentence at § 924(c)(1)(A)(i).

Baugh is entitled to resentencing on Count 17 as a result of the vacatur of his conviction on Count 14.

### C. *Johnson* and USSG 4B1.1

Baugh argues that he is entitled to resentencing on Counts 13, 15, 16, and 23 as well, based on *Johnson*, because, by extrapolation, *Johnson* means that he no longer qualifies as a career offender for purposes of sentencing under USSG § 4B1.1. More specifically, he argues based on *Johnson* that Hobbs Act conspiracy no longer qualifies as a crime of violence under the "residual clause" of § 4B1.2(a)(2) and that his prior state convictions also no longer qualify categorically as "crimes of violence."

---

[that] has become final," 18 U.S.C. § 924(c)(1)(C)(i) (2019), 132 Stat. at 5221–22. That is, because of the First Step Act, § 924(c)(1)(C)(i) now reads: "In the case of a violation of this subsection that occurs after a prior conviction under this subsection has become final, the person shall—(i) be sentenced to a term of imprisonment of not less than 25 years . . . ." This provision, however, is not retroactive to cases on collateral review. Section 403(b) of the First Step Act includes an application note for "pending cases," explaining that the § 924(c) amendments "shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense *has not been imposed as of such date of enactment*." 132 Stat. at 5222 (emphasis added).

At the time of Baugh's sentencing, the Sentencing Guidelines defined "crime of violence" for purposes of the career offender guideline as follows:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
>> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>>
>> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG § 4B1.2(a). Subsection (1) is often referred to as the "elements" clause or "use-of-force" clause, and subsection (2), at the time, had two clauses: the "enumerated-offense" clause and the "residual" clause.[6] *See Hollom v. United States*, 736 F. App'x 96, 9 (6th Cir. 2018).

The court understands Baugh to be arguing that neither his Hobbs Act conviction nor his prior state court convictions for aggravated assault and especially aggravated kidnapping qualify as crimes of violence except under the "residual clause" of § 4B1.2(a)(2) and, therefore, that *Johnson* requires that his 210-month sentence as a career offender on Counts 13, 15, 16, and 23 be vacated. This claim, however, cannot be sustained because, in *Beckles v. United States*, 137 S. Ct. 886, 894 (2017), the Supreme Court held that the United States Sentencing Guidelines are not subject to a constitutional challenge under the void-for-vagueness doctrine.

Even if that were not the case, it does not appear that Baugh's Hobbs Act conspiracy charge affected his classification as a career offender, and his two previous convictions for aggravated assault and especially aggravated kidnapping still qualify as crimes of violence under the Sentencing Guidelines. With respect to the first, the Sixth Circuit has expressly held that Tennessee

---

[6] In August 2016, in the wake of *Johnson*, the Sentencing Commission removed the residual clause.

aggravated assault qualifies categorically as a crime of violence. *Hollom v. United States*, 736 F. App'x 96, 101 (6th Cir. 2018) (affirming the defendant's sentencing as a career offender on direct appeal, because Tennessee aggravated assault "categorically qualifies as a crime-of-violence predicate under the use-of-force clause found in U.S.S.G. §4B1.2(a)").

Regarding the kidnapping conviction (and the aggravated assault conviction), as the Sixth Circuit also observed in *Hollom*:

> In addition to the offenses in the "enumerated-offense" clause, the Application Note lists additional predicate offenses: "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling." U.S.S.G. § 4B1.2 cmt n.1. The Sentencing Commission later consolidated the Application Note offenses into the Guidelines, but even "[p]rior to the amendment, we treated the crimes 'specifically enumerated in Application Note 1' as separate offenses."[7]

*Hollom*, 736 F. App'x at 98 (quoting *United States v. Kennedy*, 683 F. App'x 409, 419 (6th Cir. 2017), and *United States v. Rodriguez*, 664 F.3d 1032, 1036 (6th Cir. 2011)). Based on this language, and in the absence of any relevant countervailing argument by Baugh, the court finds that especially aggravated kidnapping under Tennessee law, too, still qualifies as a crime of violence under § 4B1.2, for purposes of sentencing under§ 4B1.1.

Baugh still qualifies as a career offender under the Sentencing Guidelines.

### D.     Ineffective Assistance of Counsel

As a general rule, any claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows "(1) 'cause' excusing [the] procedural default, and (2) 'actual prejudice' resulting from the errors," *United States v. Frady*,

---

[7] Indeed, in the 2016 Guidelines Manual, the enumerated offenses in § 4B1.2(a)(2) expressly include "murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)."

456 U.S. 152, 168 (1982) (citations omitted), or demonstrates that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted). A claim of ineffective assistance of counsel, however, is not subject to the procedural-default rule. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective assistance claim may be raised in a collateral proceeding under § 2255, regardless of whether the movant could have raised the claim on direct appeal. *Id.*

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the effective assistance of counsel during their criminal proceedings, *Missouri v. Frye*, 566 U.S. 134, 138 (2012), and this right applies to "all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (citation omitted). This includes a right to effective counsel on a criminal defendant's first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 392 (1985). To make out a claim of ineffective assistance of counsel, the movant must show both that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

The *Strickland* standard "is highly deferential, and [courts] apply a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689). "In judging performance, [a] court must 'assess counsel's overall performance throughout the case in order to determine whether the identified acts or omissions overcome the presumption that a counsel rendered reasonable professional assistance.'" *Carey v. Myers*, 74 F. App'x 445,

448 (6th Cir. 2003) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91.

In this case, Baugh argues that he was subject to ineffective assistance of counsel at trial, insofar as his attorney (1) failed to move for a new trial based on the improper joinder of unrelated charges and defendants, causing unfair prejudice at trial through cumulation of "spillover" evidence; (2) failed to move for a new trial or a judgment of acquittal based on the jury's hearing evidence that the movant was incarcerated prior to and during the charged offenses; and (3) failed to move for a judgment of acquittal on the basis that the jury was not instructed to determine the specific illegal drugs that "Lil Ced" was dealing and no proof of a particular substance was offered by the government at trial, resulting in insufficient evidence to convict of Hobbs Act robbery on count 13. (*See* Doc. No. 4, at 13–21). He insists that he was prejudiced by these failures, because, if the arguments had been made, the district court would have dismissed the convictions and granted a new trial. He also argues that appellate counsel was ineffective for failing to raise these same issues on appeal and that he was likewise prejudiced by that failure. None of these arguments has merit.

### 1.      *Improper Joinder*

Rule 8(a) of the Federal Rules of Criminal Procedure provides that two or more offenses may be charged in the same indictment when the offenses "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." While courts may "construe the Rule broadly to promote the goals of trial convenience and judicial efficiency,'" *United States v. Graham*, 275 F.3d 490, 512 (6th Cir. 2001)

(internal quotation marks omitted), "it is also true that failure to meet the requirements of this rule constitutes misjoinder as a matter of law." *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002) (citation omitted). If joinder of multiple defendants or multiple offenses does not comply with the requirements of Rule 8, the district court has "no discretion on the question of severance." *Id.*; *see also* Charles Alan Wright, 1A Federal Practice & Procedure: Criminal § 145, at 89–90 (3d ed. 1999) ("Misjoinder of offenses or defendants . . . raises only a question of law. If there has been misjoinder, the trial court has no discretion to deny the motion."). Whether joinder was proper under Rule 8(a) is determined by the allegations on the face of the indictment. *Chavis*, 296 F.3d at 456. "To prevail on a request for severance the defendant must show compelling, specific, and actual prejudice." *Thomas v. United States*, 849 F.3d 669, 675, 2017 WL 727152 (6th Cir. 2017)

In this case, Baugh was tried with one co-defendant, Omega Harris, on fourteen separate counts related to six different conspiracies.[8] He was convicted on the charges associated with only three of those conspiracies, those related to Counts 13 and 14 (the conspiracy to rob "Lil Ced"), 15 through 17 (the conspiracy to rob "Lil Wee Wee"), and 23 (conspiracy to sell crack cocaine). He was acquitted on the charges related to two of the alleged conspiracies (Counts 37, 38, 41, and 42), and the jury was unable to reach a verdict on the charges associated with the alleged conspiracies to retaliate, and actual retaliation, against a potential witness, resulting in a mistrial and later dismissal without prejudice of Counts 33, 34, 35, and 36.

As the defendant acknowledges, his trial counsel filed a pretrial motion to sever, seeking to have the counts related to each separate conspiracy tried separately from each other and, more generally, seeking to sever the claims against him from those asserted against the other defendants.

---

[8] Harris was charged and tried on four additional counts regarding which Baugh was not implicated.

(Doc. Nos. 502, 512.) The record does not document Judge Nixon's ruling on the motion, but the course of proceedings indicates that it was denied. Notwithstanding, ten of the original twenty-eight defendants had already pleaded guilty well before Baugh's trial was to begin, and the motions to sever filed by six other defendants were granted shortly before trial, in December 2012 and January 2013. The remaining twelve defendants, including Baugh, were scheduled to go to trial beginning January 29, 2013. Of those, ten entered guilty pleas either shortly before trial was scheduled to begin or shortly after jury selection began. Ultimately, Baugh was tried with only one co-defendant, the charges against whom largely overlapped with those against Baugh.

In support of his claim that counsel was ineffective for failing to move for a new trial on the basis of improper joinder, Baugh asserts, in a wholly conclusory fashion:

> [I]n this case, it was likely that the jury determined Petitioner was guilty of the Hobbs Act conspiracy based on evidence concerning the drug conspiracy, and *vice versa*. However, each of these conspiracy cases were [sic] separate and unique and should not have been joined under Rule 8. Indeed, the only evidence common to the two charges of conspiracy to distribute cocaine and two charges of conspiracy to commit Hobbs Act robbery, was that Petitioner was charged in each conspiracy while he was incarcerated. The lack of evidentiary overlap between the four distinct conspiracies charged supports a finding that the offenses "do not spring from the same series of events or factual background." Thus, the joinder of the charges was improper under Rule 8.

(Doc. No. 4, at 15 (quoting *United States v. Chavis*, 296 F.3d 450, 460 (6th Cir. 2002)).)

That paragraph incorporates the totality of his argument in support of his claim that joinder was improper under Rule 8. He further argues that, even if the requirements of Rule 8 were met, severance was required under Rule 14, which grants the district courts discretion to order separate trials of counts or separate trials against different defendants, if joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a); *see also Zafiro v. United States*, 506 U.S. 534, 539 (1993) "[W]hen defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 . . . if there is a serious risk that a joint trial would . . .

prevent the jury from making a reliable judgment about guilt or innocence."). Without pointing to any specific facts, Baugh argues that it should have been obvious to counsel that "all of the unfair spillover evidence from unrelated cases permeated the trial," thus preventing the jury from making a reliable judgment about his guilt or innocence. (Doc. No. 4, at 16.) He also argues, again in a conclusory fashion, that counsel's failure to move for a new trial or judgment of acquittal fell below an objective standard of reasonableness and clearly did not amount to a strategic decision, because counsel had filed motions to sever prior to trial. (*Id.* at 17.)

To the extent Baugh is now arguing that the drug conspiracy charged in Count 15 should have been tried separately from the Hobbs Act conspiracy charged in Count 16, that assertion is patently untenable. Those charges arose from a single conspiracy, and the evidence related to them completely overlapped. Because they were "based on the same act or transaction," their joinder did not violate Rule 8.

To the extent that he is arguing that the counts related to the three separate conspiracies on which he was found guilty should have been severed from each other, meaning one trial on Counts 13 and 14, another on counts 15, 16, and 17, and a third on Count 23, the court finds that the requirements of Rule 8 were met here as well. These admittedly separate conspiracies were all of "the same or similar character" and "constitute[d] parts of a common scheme or plan"—that being Baugh's operation of business from within prison. The court finds it highly unlikely that Judge Nixon would have granted a motion for a new trial, if counsel had moved for one, or that the Sixth Circuit would have reversed such a decision if counsel had argued on appeal that denial of such a motion was error. As a result, Baugh cannot show either that counsel erred or that he was prejudiced by any alleged error under Rule 8.

Finally, insofar as Baugh is arguing that his counsel was ineffective based on his failure to

move for a mistrial because the joinder of his trial with that of Omega Harris violated Rule 8, this claim, too, is without merit. Even if the court assumes that the joinder of the charges against Baugh with those against Harris was improper under Rule 8 and that counsel's failure to move for a new trial on that basis, or, alternatively, under Rule 14, was objectively unreasonable, Baugh has not shown that he was actually prejudiced by any purported error. He does not point to any specific evidence that constitutes "spillover" evidence and has presented no evidence that the jury was unable to parse the evidence before it to determine his guilt in relation to the specific charges. Notably, as indicated above, Baugh was convicted on only six of fourteen counts against him relating to three of six alleged conspiracies. Clearly, the members of the jury were able to assess the evidence related to his involvement in the each of the alleged criminal conspiracies, as they were undoubtedly charged to do in the jury instructions, and convicted him only on those for which they found him guilty beyond any reasonable doubt.

Baugh is not entitled to relief on the basis of this claim.

2.      *Evidence of the Defendant's Incarceration During Trial*

The Ninth Superseding Indictment charged Baugh with involvement in conspiracies that took place entirely while he was incarcerated on prior unrelated state convictions. The fact of his incarceration was not an element of any of the claims against him, but much of the evidence presented at trial consisted of jailhouse telephone calls as well as physical evidence located in his cell. Prior to trial, counsel filed a motion in limine to exclude the introduction of evidence showing that he was incarcerated. (Crim. Doc. No. 1735.) That motion did not reference Rule 404(b) of the Federal Rules of Evidence, but it argued that reference to "prison" would necessarily imply that Baugh had been convicted of a serious felony, "as those convicted of misdemeanors or petty crimes do not go to prison," and that the very name of the prison in which he was incarcerated, Riverbend Maximum Security Institution ("Riverbend"), implied that it housed the "worst of the worst."

(Doc. No. 1735, at 1.) Baugh sought to exclude reference to prison or Riverbend as irrelevant, under Rule 402, or as substantially more prejudicial than probative of any material fact, under Rule 403. (*Id.* at 2.)

In its Response, the government summarized some of the evidence and explained why it was relevant. In particular, the government explained that, because Baugh had been in prison since the late 1990s, "few witnesses [would] be able to identify [him] by face." (Doc. No. 1751, at 1.) Much of the evidence against Baugh consisted of prison telephone calls, and the fact that he was incarcerated was the only way to identify him as the person involved in these phone calls. The defendant asserted in his motion in limine that the evidence of incarceration was irrelevant, but he also refused to stipulate that it was his voice on the telephone calls. Other evidence included an address found in Baugh's cell, a phone charger, and letters addressed to him or sent by him that also showed his prison address.

Judge Nixon, after hearing oral argument, granted Baugh's motion in part. He directed that the government should, to the extent possible, use the phrases "Tennessee Department of Correction facility" or "jail," instead of "Riverbend Maximum Security Institution" or "prison," when referring to Baugh's incarceration. (Doc. No. 1863, at 1.) The transcript of the hearing has not been made part of the record, but it is clear that Judge Nixon found that the prejudicial effect of the evidence showing that Baugh was incarcerated did not substantially outweigh its probative value, and he attempted to mitigate any potential prejudice to the extent feasible.

Baugh also filed a pretrial motion in limine to exclude evidence of "other crimes, wrongs, or acts" and "other inadmissible evidence," expressly referencing Rule 404(b). (Doc. No. 1813.) The government had previously filed a form Notice of its intent to offer evidence of other crimes and acts, including that Baugh had possessed contraband cell phones and was engaged in drug

trafficking while in prison. The defendant argued that the evidence the government sought to introduce was relevant only for the purpose of proving conduct in conformity with character and a propensity to commit the charged violent conspiracies. (Doc. No. 1813, at 4.) He argued that the evidence should be excluded under Rule 404(b), citing, among other authority, *United States v. Merriweather*, 78 F.3d 1070, 1079 (6th Cir. 1996). The court heard oral argument on the motion and deferred ruling on it until trial, but directed the government to provide "a reasonable period of notice before it introduces evidence . . . under Federal Rule of Evidence 404(b)," at which time the defendant could object and reassert his motion. (Doc. No. 1887.)

Baugh argues now that the jury's knowledge that he was incarcerated "during the time period the government believed he engaged in criminal acts" had a "highly prejudicial impact at trial." (Doc. No. 4, at 17–18.) He claims that, "[b]ecause the fact of [his] incarceration was made abundantly clear to the jury, counsel should have moved for a new trial or judgment of acquittal" based on the admission of evidence in violation of Rule 404(b). (*Id.* at 18.) He also argues that, whatever relevance his incarceration might have had was strongly outweighed by the prejudicial impact of such evidence and that it was therefore excludable under Rule 403 of the Federal Rules of Evidence. He claims that counsel's failure to move for a new trial or judgment of acquittal based on the improper admission of the evidence of his incarceration fell below an objective standard of reasonableness and that he was prejudiced thereby in that, if such a motion had been filed, "the district court would have granted a new trial and dismissed the convictions." (Doc. No. 4, at 20.)

Rule 404(b) of the Federal Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The rule is subject to exceptions in a criminal case. Evidence of other bad acts "may be admissible" to prove

"motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Sixth Circuit has provided explicit instructions for the application of Rule 404(b) during trial, requiring, first, an objection by the defendant to the introduction of evidence of "other crimes, wrongs, or acts," which imposes a burden on the government to identify the "*specific* purpose or purposes for which the government offers the evidence." *United States v. Merriweather*, 78 F.3d 1070, 1076 (6th Cir. 1996). The district court must then

> determine whether the identified purpose . . . is "material"; that is, whether it is "in issue" in the case. If the court finds it is, the court must then determine, before admitting the other acts evidence, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Rule 403. If the evidence satisfies Rule 403, then, after receiving the evidence, the district court must "clearly, simply, and correctly" instruct the jury as to the specific purpose for which they may consider the evidence.

*Id.* at 1076–77.

In this case, Baugh has not identified whether this procedure was followed at trial or even whether counsel renewed his Rule 404 objection at trial. The government argues that evidence of Baugh's incarceration was relevant and necessary to prove Baugh's identify as the speaker on a number of incriminating telephone calls. Because Baugh has not identified any specific instances during the trial when Rule 404(b) evidence was impermissibly admitted in violation of the Rule 404(b), instead relying on a wholly conclusory assertion that evidence of his incarceration should have been excluded, the court finds that he has not carried his burden of showing that counsel erred or that he was actually prejudiced thereby.

Likewise, with respect to the movant's arguments under Rules 402 and 403, prejudicial evidence is not *per se* inadmissible. Only irrelevant evidence is inadmissible under Fed. R. Civ. P. 402. And the district court has the discretion to exclude relevant evidence that is *unfairly*

prejudicial, that is, evidence the probative value of which is "substantially outweighed" by the danger of unfair prejudice, under Fed. R. Civ. P. 403. In this instance, again, Baugh has not pointed to any actually irrelevant evidence, any instances in which the government violated Judge Nixon's limiting Order, or any instances in which the government gratuitously referenced or presented evidence regarding Baugh's incarcerated status.

Baugh has not shown that counsel was ineffective for failing to move for a judgment of acquittal or a new trial based on the evidence showing that he was incarcerated, and there is no indication that Judge Nixon would have granted such a motion, had one been filed. Likewise, appellate counsel was not ineffective for failing to raise this argument on appeal.

### 3. *Evidence of Specific Drugs*

Finally, Baugh argues that counsel was constitutionally ineffective for failing to move for a judgment of acquittal when the government failed to present evidence of a controlled substance necessary to "support the conviction for Hobbs Act Robbery in Count 13." (Doc. No. 4, at 20.) He references caselaw in support of the proposition that, to "invoke the broad commercial jurisdiction for a Hobbs Act 'drug robbery' case, proof must be offered at trial that the proceeds of the robbery were from a specific controlled substance." (Doc. No. 4, at 20 (collecting cases).)

Baugh raised a nearly identical argument on appeal: that a reasonable jury could not find him guilty on Count 13, because there was insufficient evidence that his plot to rob Cedric Woods, aka "Lil Ced," affected interstate commerce, as required by the Hobbs Act, and insufficient evidence that Lil Ced actually sold drugs. *United States v. Baugh*, 605 F. App'x 488, 490 (6th Cir. 2015). The Sixth Circuit rejected both arguments, first finding sufficient evidence that the co-conspirators believed that Lil Ced dealt in cocaine, that they expected to find "bricks," meaning cocaine, at Lil Ced's house, and that cocaine "ain't grown in Tennessee." *Id.* at 491. The court concluded: "The interstate movement of cocaine was supported by considerable evidence and not

challenged, and no rational jury could have found to the contrary on this record." *Id.*

The court also rejected Baugh's argument that, in the absence of testimony from Lil Ced himself, "the government had no evidence that Woods *actually* dealt drugs." *Id.* As relevant here, the court found that whether Lil Ced actually dealt drugs was immaterial "in the context of a conspiracy because it requires only proof that the scheme would have affected commerce had it succeeded." *Id.* In other words, it was enough that the co-conspirators *intended* to rob Lil Ced of cocaine, regardless of whether he was really dealing in cocaine.

For the same reason, evidence that Lil Ced was selling a specific controlled substance was not required to support the conspiracy conviction. This claim is wholly without merit.

## IV. CONCLUSION

For the reasons set forth herein, the court will grant Leonard Baugh's motion under 28 U.S.C. § 2255 and "vacate and set aside the judgment." 28 U.S.C. § 2255(b).

As for relief regarding the sentence, the court recognizes that it has broad discretion under § 2255(b) to resentence or correct the sentence as appropriate. *See Ajan v. United States*, 731 F.3d 629, 633, (6th Cir. 2013) ("Section 2255 gives district judges wide berth in choosing the proper scope of post–2255 proceedings." (internal quotation marks and citation omitted)); *see also Davis*, 139 S. Ct. at 2336 (noting that, "when a defendant's § 924(c) conviction is invalidated, courts of appeals 'routinely' vacate the defendant's entire sentence on all counts 'so that the district court may increase the sentences for any remaining counts' if such an increase is warranted." (quoting *Dean v. United States*, 137 S. Ct. 1170, 1176 (2017)).

That is, the court has the discretion to resentence on all remaining counts or, instead, to correct the sentence by excising the 60-month term imposed on the vacated § 924(c) conviction (Count 14), and vacating the 300-month term imposed on Count 17 and replacing it with a 60-month term, leaving intact the 210-month sentence imposed for Counts 13, 15, 16, and 23, resulting

in a 270-month sentence. This issue not having been briefed by the parties, the court will grant them thirty days within which to attempt to reach an agreement regarding resentencing and regarding whether the movant will waive personal appearance. If they are unable to agree, they should file renewed sentencing positions.

    An appropriate Order is filed herewith.

_____

ALETA A. TRAUGER
United States District Judge